Argued and submitted November 2, peremptory writ to issue as decided
December 31, 1992

STATE ex rel Gregory KAFOURY,
*Plaintiff-Relator,*

*v.*

Honorable Robert Paul JONES,
Judge of the Circuit Court
for Multnomah County,
*Defendant,*

*and*

Honorable Donald H. LONDER,
Presiding Judge of the State of Oregon
for Multnomah County Circuit and District Courts,
*Intervenor.*

(SC S39395)

843 P2d 932

Mark G. McDougal, Portland, argued the cause and filed the brief for plaintiff-relator.

Charles F. Hinkle, of Stoel, Rives, Boley, Jones & Grey, Portland, argued the cause and filed the brief for defendant.

Honorable Donald H. Londer, intervenor, Portland, filed an affidavit *pro se*.

Ross M. Shepard and Robert C. Homan, Eugene, filed a brief on behalf of *amicus curiae* Oregon Criminal Defense Lawyers Association, in which Dale W. Penn, Salem, joined on behalf of *amicus curiae* Oregon District Attorneys Association.

Arthur C. Johnson, Eugene, filed a brief on behalf of *amicus curiae* Oregon Trial Lawyers Association.

GILLETTE, J.

## GILLETTE, J.

In this original mandamus proceeding, the issue is whether a motion to disqualify a judge under ORS 14.260(1), set out *infra*, should be granted where the moving party acts in good faith and not for purposes of delay in bringing the motion, and the grounds for the motion are not irrational. We conclude that, in the circumstance specified, the motion should have been granted. We conclude that a peremptory writ should issue in this case.

Plaintiff-relator, an attorney representing the plaintiff in a civil action before the Circuit Court for Multnomah County, moved to disqualify the Honorable Lee Johnson from hearing a motion for summary judgment in the action. The motion to disqualify was made under ORS 14.250 and 14.260(1). ORS 14.250 provides, in part:

"No judge of a circuit court shall sit to hear or try any suit, action, matter or proceeding when it is established, as provided in ORS 14.250 to 14.270, that any party or attorney believes that such party or attorney cannot have a fair and impartial trial or hearing before such judge."

ORS 14.260(1) provides:

"Any party to or any attorney appearing in any cause, matter or proceeding in a circuit court may establish the belief described in ORS. 14.250 by motion supported by affidavit that such party or attorney believes that such party or attorney cannot have a fair and impartial trial or hearing before such judge, and that it is made in good faith and not for the purpose of delay. No specific grounds for the belief need to be alleged. Such motion shall be allowed unless the judge moved against, or the presiding judge in those counties where there is one, challenges the good faith of the affiant and sets forth the basis of such challenge. In the event of such challenge, a hearing shall be held before a disinterested judge. The burden of proof shall be on the challenging judge to establish that the motion was made in bad faith or for the purposes of delay."

In support of the motion to disqualify, plaintiff-relator submitted the required affidavit, stating in summary fashion that he did not believe that his client could receive a fair and impartial hearing before Judge Johnson. Judge Johnson challenged the plaintiff-relator's good faith, and a

hearing was held before another judge, the defendant in this action. At the hearing, Judge Johnson stated that he was unacquainted with plaintiff-relator's client, but that he had ruled adversely to the client's legal position in another case in which plaintiff-relator had served as counsel. In response, plaintiff-relator gave several reasons for his motion to disqualify Judge Johnson. In a written opinion, defendant summarized those reasons as follows:

"1. That [plaintiff-relator] filed a previous motion to disqualify Judge Johnson. There was no challenge to that motion. Subsequently, he has appeared before Judge Johnson on other matters in which he did not move to disqualify Judge Johnson.

"2. That he made a campaign contribution to a[n] opponent of Judge Johnson in a contested judicial election.

"3. That while he was a spectator at a hearing in the courtroom of Judge Johnson, he observed what he perceived to be the frustrations of another lawyer who was then appearing before Judge Johnson.

"4. That Judge Johnson is a conservative wealthy republican while he, [plaintiff-relator], is a liberal and his client in the underlying case is of modest means. That Judge Johnson favors 'the big guy' as opposed to the 'little person.'

"5. That Judge Johnson rules in a[n] autocratic manner and is result oriented — that is, Judge Johnson rules primarily on the basis of how he views the matter should be resolved without due consideration of legal principles.

"6. That Judge Johnson has on a prior unrelated case imposed a sanction against [plaintiff-relator] for a procedural violation."[1]

In his opinion, defendant posed the determinative issue in the following manner: "Will the plaintiff in the underlying action [plaintiff-relator's client] receive a fair and impartial trial before Judge Johnson?" After discussing plaintiff-relator's reasons for the motion to disqualify Judge Johnson, defendant denied the motion, because he found "no

---

[1] In his brief before this court, plaintiff-relator characterizes the facts under 1 and 2 above not as part of "the basis of Plaintiff-Relator's belief that Judge Johnson was incapable of being fair and impartial," but as "prior consistent acts which support an assertion of good faith on the part of Plaintiff-Relator."

basis to conclude that a fair and impartial trial of the underlying case cannot be had before Judge Johnson.''

Plaintiff-relator then sought an alternative writ of mandamus from this court, arguing that defendant had applied the wrong legal standard to the motion to disqualify. Plaintiff-relator argued that the proper standard was whether he had *a good faith belief* that his client could not receive a fair and impartial trial, not whether his client could, in fact, receive such a trial. We issued an alternative writ to address that issue. Because we conclude that, in the absence of evidence of bad faith or purpose of delay,[2] a motion to disqualify must be granted, we now direct that a peremptory writ issue.

■    To determine the proper legal standard for a motion to disqualify under ORS 14.250 and 14.260(1), we begin with the statutes themselves. *See Teeny v. Haertl Constructors, Inc.*, 314 Or 688, 694, 842 P2d 788 (1992) (stating this court's role in interpreting a statute). The wording of ORS 14.250 and 14.260(1) supports plaintiff-relator's argument. First, ORS 14.250 plainly states that the primary issue is *the belief of the moving party*, not the objective truth of that belief. That statute states that ''[n]o judge * * * shall sit to hear or try any suit * * * when it is established * * * that any party or attorney *believes* that such party or attorney cannot have a fair and impartial trial or hearing before such judge.'' (Emphasis supplied.)

Next, ORS 14.260(1) prescribes the requirements for establishing such a belief and adds the element of the affiant's ''good faith'' to the inquiry. Under ORS 14.260(1), the motion must be supported by an affidavit. The affidavit need not state specific grounds for the moving party's belief, but need only state that the motion is made ''in good faith and not for the purpose of delay.'' If the required affidavit is filed, the motion ''shall be allowed,'' unless the judge challenges the affiant's good faith, in which case, a hearing ''shall be held.'' At the hearing, the judge bears the burden of proving ''that the motion was made in bad faith or for the purposes of delay.'' That is, the challenged judge must affirmatively prove

---

[2] The defendant does not argue that plaintiff-relator was acting for ''purposes of delay.'' We therefore do not address that issue further.

the falsity of the good faith assertion in the affidavit by proving that the motion was made in bad faith or for the purpose of delay. If the challenged judge fails to satisfy this burden of proof, the judge must be disqualified.

Given this interpretation of the disqualification statutes, defendant asked (and answered) the wrong question when he framed the issue as whether "the plaintiff in the underlying action [will] receive a fair and impartial trial before Judge Johnson." The issue to be resolved at a hearing under ORS 14.260 is: "Was the motion to disqualify made in bad faith or for purposes of delay?" Only if that question is answered in the affirmative may the motion be denied.

However, before this court may proceed to answer the proper question, based on the evidence in the record, we must respond to several arguments by defendant. First, in support of his position, defendant contends that he applied the proper standard because, as this court stated in *State ex rel Ray Wells, Inc. v. Hargreaves*, 306 Or 610, 617, 761 P2d 1306 (1988), "the key inquiry is whether a fair and impartial trial may be had before the challenged judge." Although that argument may have some superficial appeal, it does not withstand close scrutiny.

In *Hargreaves*, this court faced the argument that the 1987 amendments to the judicial disqualification statutes had rendered the statutes unconstitutional. In holding the statutes constitutional, this court's majority noted that, although the legislature had deleted a former statutory requirement that the moving party allege "prejudice," the legislature had "retain[ed] what is key," namely, "whether a fair and impartial trial may be had before the challenged judge." *Id.*

Although that passage from *Hargreaves* may seem to suggest otherwise, this court has never interpreted the disqualification statutes to require a showing of *actual* prejudice. In *U'Ren v. Bagley*, 118 Or 77, 83, 245 P 1074 (1926), the court stated: "It is the challenge of and not the fact of prejudice that *ipso facto* disqualifies the judge from acting in a particular cause." More recently, in *State ex rel Oliver v. Crookham*, 302 Or 533, 731 P2d 1018 (1987), this court stated:

> "The legislative policy stated in ORS 14.260 is to relieve a party or attorney from having to proceed before a judge when the party or attorney in good faith 'believes' that either cannot have a fair or impartial hearing before that judge. Proof that the belief is correct is not required; it is enough that the attorney or party in good faith believes it."

*Id.* at 539. Indeed, it was this discussion of prejudice in *Oliver* that the court summarized in *Hargreaves* as the "key" on which defendant relied. 306 Or at 617. Thus, despite any suggestion in *Hargreaves* to the contrary, the proper issue for inquiry is the moving party's *belief* in the fairness and impartiality of the judge, not the judge's actual fairness and impartiality.

Recognizing this, defendant concentrates his argument on the element of "good faith" in ORS 14.260(1), arguing that "good faith" under the disqualification statutes must contain an element of objective reasonableness. According to defendant, if plaintiff-relator's belief is measured against an objective standard, then defendant was correct in denying the motion to disqualify, because plaintiff-relator had no objectively reasonable basis for his "good faith" belief that his client could not receive a fair and impartial trial before Judge Johnson.

It is clear from this court's precedents that the standard of "good faith" in ORS 14.260 has historically involved considerations of reasonableness. In *State ex rel Lovell v. Weiss*, 250 Or 252, 430 P2d 357, 442 P2d 241 (1968), where this court first imposed a good faith hearing requirement, the court stated:

> "Since the party or attorney seeking to remove a duly elected judge from the bench for the trial of one or more cases may do so only if he believes in good faith that the judge is prejudiced, it is not an undue hardship to require him, when his good faith is challenged, to show that his belief is based upon a *rational ground* and not upon mere pique, whimsy, or imagination.
>
> "The burden of proving good faith, in the particular case in which an affidavit is filed, will be satisfied if the affiant testifies that he has received information about the trial judge which, if true, *reasonably* could be a basis for a fear of prejudice. The affiant need not prove that the judge is prejudiced, or even prove that the evidence upon which he bases

his apprehension is all true. But he must come forward with some evidence, hearsay or otherwise, from which a reasonable person *could* conclude that anyone possessed of such evidence *might* reasonably question the trial judge's impartiality in a matter."

*Id.* at 257-58 (emphases supplied). More recently, in *State ex rel Oliver v. Crookham, supra*, 302 Or at 540, this court stated that "the circumstances must be such that the moving party or attorney could *reasonably* believe that he would not receive a fair trial in this case before this judge." (Emphasis supplied.) *See also State ex rel Bowman v. Crookham*, 302 Or 544, 547, 731 P2d 1025 (1987) ("The issue, under ORS 14.250-14.270, is whether there exists a *reasonable* belief that a judge is prejudiced against any party or attorney") (emphasis supplied).

Of course, those former opinions of this court must be read in the context in which they were written. When those cases were decided, ORS 14.260 did not expressly require a hearing, nor fix a burden of proof. Indeed, it was in *Lovell* that this court first decided that, when the good faith of the affiant was challenged, a hearing should be held and that the moving party should carry the burden of proving good faith. Nearly 20 years later, when *Oliver* and *Bowman* were decided, those procedures remained intact. On the heels of *Oliver* and *Bowman*, however, the legislature chose to change the procedures under ORS 14.260. Or Laws 1987, ch 338, § 2. Specifically, where the court had placed the burden of proving good faith on the moving party, the legislature placed the burden of proving "bad faith" on the challenging judge.

This amendment to the disqualification statutes requires us to examine the meaning of the term "bad faith." In *Mattiza v. Foster*, 311 Or 1, 803 P2d 723 (1990), this court inquired into the meaning of "bad faith" in ORS 20.105(1), a statute providing for the award of attorney fees in actions taken "in bad faith, wantonly or solely for oppressive reasons." The court first noted that "[t]he term 'bad faith' is not self-explanatory." 311 Or at 4. After finding that the legislative history did not supply a definition, the court surveyed relevant case law from the federal courts and the Court of Appeals and reached the conclusion that, "for purposes of ORS 20.105(1), 'bad faith' is the assertion of a claim, defense,

or ground for appeal or review, the primary aim of which is something other than the procurement of the fair adjudication of an authentic claim." *Id.* at 10.

Like the legislative history of the sanction statute in *Matizza*, the legislative history of the 1987 amendments to the disqualification statutes at issue here does not define the term "bad faith." In this instance, then, we must determine the most likely legislative intent in using that term. *See Enertrol Power Monitoring Corp. v. State of Oregon*, 314 Or 78, 84, 836 P2d 123 (1992) ("Other aids to construction having failed, we are left to ascertain the most likely legislative intent in using the term 'agency.' "). We believe that the legislature intended the term "bad faith" in ORS 14.260(1) to have a meaning akin to the term's meaning in ORS 20.105(1), the statute interpreted in *Mattiza*.

■ This court previously has stated that the disqualification statutes "are designed to ensure that all litigants receive fair and impartial trials and to maintain public confidence in the judicial system by eliminating even the appearance of impropriety." *State ex rel Ray Wells, Inc. v. Hargreaves, supra*, 306 Or at 620 (Peterson, C. J., dissenting) (citing *U'Ren v. Bagley, supra*, 118 Or at 82-83). From this purpose, it follows that a motion to disqualify is proper so long as the motion seeks to advance the aim of the statutes — that is, procurement of fair and impartial adjudication. Thus, using the language in *Mattiza* as a guide, we conclude that, for purposes of ORS 14.260(1), a motion to disqualify is made in "bad faith" if the primary aim of the motion is something other than the procurement of the fair adjudication of the action in which the motion is made.

■ Given that meaning of the term "bad faith," any "objective reasonableness" requirement to be found in the statute must be very limited. But, even in *Mattiza*, this court did not necessarily abandon the idea of an objective component to the standard involved: "In rare cases, an improper purpose constituting bad faith may be inferred solely from the meritless nature of the claim, defense, or ground for appeal or review." *Mattiza v. Foster, supra*, 311 Or at 10. (Footnote omitted.) Generally, a challenging judge in a hearing conducted under ORS 14.260(1) will be required to show that the affiant's primary purpose in making the motion was

something other than procurement of the fair adjudication of the action involved. That is a subjective inquiry. But there may be rare cases in which a party's sincere belief that it cannot receive a fair and impartial hearing before a particular judge is so irrational that permitting the party to succeed on the basis of that belief would be tantamount to reinstating the "peremptory challenge" scheme condemned in *State ex rel Bushman v. Vandenburg*, 203 Or 326, 276 P2d 432, 280 P2d 344 (1955), discussed *infra*. We assume that the legislature did not intend to reinstate a statutory scheme that is, for all practical purposes, the twin of the one previously ruled unconstitutional by this court in the *Bushman* case. We therefore conclude that the scheme adopted by the legislature and governing this case contains a requirement of rationality.

■ This leads us to defendant's final argument. Relying primarily on *State ex rel Bushman v. Vandenburg, supra,* defendant contends that, if "good faith" under ORS 14.260(1) is purely subjective, then the disqualification statutes violate Article VII (Amended), section 1, of the Oregon Constitution.[3] As we have indicated, however, there is a rationality requirement in the statutes. With this rationality requirement, the disqualification statutes withstand the constitutional challenge urged by defendant.

In *Circuit Court v. AFSCME*, 295 Or 542, 669 P2d 314 (1983), this court stated:

> "Our cases indicate that general institutional inconvenience is not enough to render legislation constitutionally defective. Only an outright hindrance of a court's ability to adjudicate a case such as occurred in *State ex rel Bushman v. Vandenburg* * * * or the substantial destruction of the exercise of a power essential to the adjudicatory function * * * will prompt an article VII, section 1 violation."

*Id.* at 551. In *Bushman*, the court had invalidated an earlier version of the disqualification statutes that provided for

---

[3] Article VII (Amended), section 1, provides:

"The judicial power of the state shall be vested in one supreme court and in such other courts as may from time to time be created by law. The judges of the supreme and other courts shall be elected by the legal voters of the state or of the r respective districts for a term of six years, and shall receive such compensati : as may be provided by law, which compensation shall not be diminished c ing the term for which they are elected."

disqualification based solely on "an application in writing." ORS 14.220(1) (1953). The court found the scheme to be unconstitutional, because it essentially permitted a party to exercise a "peremptory challenge" of a judge. The court determined that this scheme "contravene[d] the principle of the separation of powers."[4] *State ex rel Bushman v. Vandenburg, supra,* 203 Or at 341.

The rationale of *Bushman* does not compel a similar result here, because there are pivotal differences between the present statutory scheme and that at issue in *Bushman.* In *Bushman,* because there were no requirements other than a written application, the scheme "invested 'litigants and their attorneys with the power to remove duly appointed or elected and qualified judges from the bench in particular cases *at will — for good cause, bad cause, or no cause at all." Id.* at 337 (emphasis supplied). In contrast, the scheme at issue here does restrict, albeit loosely, the rights of litigants and attorneys to disqualify judges. A person seeking to disqualify a judge must swear to a good faith belief that a fair and impartial hearing cannot be had before that judge. Even then, the outcome is not automatic. If the challenged judge proves that the person made the motion in bad faith, the motion will be denied. And, as discussed above, in rare cases, "bad faith" may be proved where the movant's sincere belief is so irrational that allowing the motion would amount to "an outright hindrance" of the court's ability to adjudicate the case. As this court stated in *State ex rel Ray Wells, Inc. v. Hargreaves, supra,* 306 Or at 618, "[a]lthough the challenged judge may confront undesirable problems of proof, undesirable problems of proof are not unknown, * * * nor do these problems render ORS 14.260(1) the kind of statute condemned in *State ex rel Bushman v. Vandenburg, supra.*"

■ Having considered and rejected the last of defendant's arguments, we are left with the task of applying the disqualification statutes as we have interpreted them to the

---

[4] Defendant acknowledges that the ruling in *Bushman* was based on Article III, section 1 (separation of powers), rather than on Article VII (Amended), section 1, but argues that the holding in *Bushman* was made applicable to the latter constitutional provision by this court's statement in *Circuit Court v. AFSCME,* 295 Or 542, 551, 669 P2d 314 (1983), that "an outright hindrance of a court's ability to adjudicate a case such as occurred in *State ex rel Bushman v. Vandenburg* * * * will prompt an article VII, section 1 violation."

facts of this case. In a mandamus proceeding, "our function is to decide whether there was any evidence to substantiate the circuit court's ruling." *State ex rel Ware v. Hieber*, 267 Or 124, 127, 515 P2d 721 (1973). Thus, we must determine whether there was any evidence to support a finding that the motion to disqualify in this instance was made "in bad faith," *i.e.*, was there any evidence that the primary aim of plaintiff-relator's motion was something other than the procurement of the fair adjudication of the action or that the grounds for the motion were irrational?

That inquiry does not take long. Counsel for defendant judge conceded during oral argument that the judge does not contest plaintiff-relator's subjective belief that his client cannot receive a fair trial before Judge Johnson. We cannot say that the reasons given for plaintiff-relator's subjective belief all are devoid of rationality. It follows that "bad faith" under ORS 14.260(1) has not been established. The defendant judge should have granted the motion to disqualify Judge Johnson. A peremptory writ directing that the defendant judge do so shall issue.

Peremptory writ to issue.